IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

FRANK GALLEGOS,

    Plaintiff,

v.                                                                         No. Civ. 14-291 JCH/KK

SHELBY TYGART a/k/a SHELBY PRESTON
a/k/a SHELBY WILLIAMS, individually
and d/b/a PRESTON, THOMPSON, AND ASSOCIATES,
and COASTAL PROCESSING LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank Gallegos, a New Mexico resident, alleges in this case that one of Defendants or their agents made multiple threatening phone calls to him and his son in an effort to collect on his old debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. Ann. § 57-12-2(D). *See* Am. Complt. ¶¶ 4, 9-39, ECF No. 7. On August 13, 2014, Defendant Shelby Tygart filed a Motion for Limited Appearance to Challenge Jurisdiction and Motion to Dismiss (ECF No. 16), arguing that Plaintiff's suit is based on phone calls she did not make, rather, independent contractors made, and that she does not have the requisite minimum contacts with New Mexico for this Court to assert personal jurisdiction over her. Ms. Tygart attached an affidavit to her motion, raising factual issues concerning her personal involvement in the contacts with New Mexico. *See* Aff., ECF No. 16 at 3-5 of 6. This Court allowed the parties to conduct jurisdictional discovery and to submit supplemental briefs. Order, ECF No. 63. The Court, having considered the motion, pleadings, briefs, evidence, applicable law, and otherwise being

fully advised, concludes that this Court has personal jurisdiction over Defendant Tygart and her motion to dismiss should be denied.

## I.    FACTUAL BACKGROUND

From June 2012 until December 2014, Ms. Tygart started a debt collection business called Preston, Thompson and Associates, which she registered with the State of Florida as a sole proprietor. *See* Dep. Shelby Tygart ("Dep.") 12:10-16, 13:5-8, 25:8-22, ECF No. 70-1; Aff. of Shelby Tygart ¶ 1, ECF No. 16. The majority of her business involved collecting debts for Vantage Point Services ("Vantage"), a debt-buying and collection agency. *See* Dep. 14:21-20:25, ECF No. 70-1. Vantage paid Ms. Tygart a commission based on what she collected. *Id.* 38:6-12, ECF No. 70-2.

In turn, Ms. Tygart hired debt collectors, paying them a percentage of what they collected. *Id.* 20:8-11, ECF No. 70-1; *id.* 38:6-16, ECF No. 70-2. Ms. Tygart only hired collectors with Payday Loan experience. *See id.* 81:15-17, ECF No. 70-3. The people Ms. Tygart hired were generally low skilled, uneducated, unprofessional, and were on welfare. *See id.* 31:14-19, ECF No. 70-1; *id.* 88:4-89:5, ECF No. 70-4. The majority of her debt collectors worked for very short periods of time. Answer to Pl.'s Interrog. ¶ 6, ECF No. 70-6. Ms. Tygart leased office space out of which she and the majority of her debt collectors worked. *See* Dep. 25:2-33:15, ECF Nos. 70-1 to 70-2; Answer to Pl.'s Interrog. ¶ 6, ECF No. 70-6. She provided her debt collectors with desks, chairs, computers and internet access using Magic Jacks, USB ports that plug into computers and give users a specific phone number. *See* Dep. 25:2-33:15, ECF Nos. 70-1 to 70-2; *id.* 60:6-62:10, ECF No. 70-3.

Vantage provided Ms. Tygart with remote-access via log-in to its eCollect and skip tracing software. *See id.* 35:1-36:22, ECF No. 70-2; *id.* 121:22-122:25, ECF No. 70-5. Skip-

tracing software allows a collector to track down the current contact information of a debtor. *Id.* 36:6-10, ECF No. 70-2. Ms. Tygart paid Vantage to provide the skip tracing software for each of her debt collectors. *See id.* 57:9-16, ECF No. 70-3. Ms. Tygart gave her debt collectors passwords to log into the collections software. *See id.* 35:1-36:22, ECF No. 70-2. Ms. Tygart trained some of her debt collectors on how to work the e-Collect and skip-tracking systems if they did not already know those systems, which would take about an hour, but approximately 98% of her hires already knew how to use this software. *See id.* 81:18-82:19, ECF No. 70-3. She would also inform her debt collectors that she expected them to follow the FDCPA, although she did not do anything to verify that they were actually complying with the law. *See id.* 101:21-102:6, ECF No. 70-5.

Each debt collector had a "tank" on eCollect, which contained the debt collection accounts assigned to him or her. *Id.* 35:6-19, ECF No. 70-2. Ms. Tygart set a weekly amount that each debt collector should collect. *See id.* 52:18-55:10. She had the right to fire them if they did not meet their budget. *See id.* Ms. Tygart expected her debt collectors to collect on her debts only; they were not supposed to do outside work using her Magic Jacks. *See id.* 86:15-87:10, ECF No. 70-4.

After logging into the eCollect system, each debt collector could see debtors' identifying, contact, and banking information. *See id.* 40:9-41:15, ECF No. 70-2. Each collector made phone calls to debtors and entered "status" notes about their calls into the system. *See id.* 41:19-43:24. Ms. Tygart and her debt collectors used phony "dun names" when contacting debtors, including calling her business "Financial Crime Services." *Id.* 89:6-91:10, ECF No. 70-4.

Ms. Tygart monitored her debt collectors' collections activity on eCollect, at time instructing them on how to be more professional on calls and on conducting follow-up calls and

skip-tracing. *See id.* 84:2-86:14, ECF Nos. 70-3 to 70-4. When her debt collectors informed her they needed more work, she would go into their "tanks" to see if they in fact needed more work and, if so, would inform Vantage. *See id.* 84:8-24, ECF No. 70-3.

Vantage assigned Ms. Tygart the past due account of Frank Gallegos, Jr. *See* Aff. of Shelby Tygart ¶ 12, ECF No. 16; Dep. 14:21-20:7, ECF No. 70-1. Ms. Tygart assigned Plaintiff's account, among others, to one of her debt collectors, Elizabeth Elder, to attempt to collect on the account. Aff. of Shelby Tygart ¶¶ 8, 12, ECF No. 16. Ms. Elder used the dun name "Katy Long" when making collection calls. Answer to Interrog. No. 6, ECF No. 70-6. One of Ms. Tygart's debt collectors also used the dun name "Stephanie Freeman" in her debt collection calls. *See* Dep. 89:18-90:21, ECF No. 70-4.

In January 2014, Plaintiff's son, who lives in New Mexico, received a phone call at his New Mexico phone number from a business calling itself Financial Crime Services and asking for his father. Aff. of Frank Gallegos ¶¶ 2-3, ECF No. 70-8. Plaintiff Gallegos returned the call and spoke to a woman who said her name was "Katy Long," that she worked for a business called "Financial Crime Services," and that he owed $1,200 to "Financial Crime Services" from a bad check he had written to a business called Checkmate. *See id.* ¶¶ 4-7. The woman made a number of threats to Mr. Gallegos during the call. *Id.* ¶ 9. A few days later, a woman called Plaintiff at his New Mexico phone number saying that she was "Stephanie Freeman" and confirming that he "understood the situation" before she "signed off" on the criminal case to send to the state. *Id.* ¶ 10.

Ms. Tygart and her debt collectors contacted hundreds or thousands of debtors during the timeframe she owned Preston, Thompson and Associates. *See id.* 56:12-18, ECF No. 70-2. She could not recall how many of the debtors she contacted were in New Mexico. *Id.* 56:19-22.

Mr. Gallegos filed his Amended Complaint in this case on June 10, 2014. Am. Compl., ECF No. 7. Ms. Tygart closed Preston, Thompson and Associates in December 2014. Dep. 25:8-26:4, ECF No. 70-1. Around that time, Ms. Tygart sold her office equipment, including her computers and Magic Jacks. *Id.* 62:11-63:2, ECF No. 70-3. She threw away all the records from her business. *See id.* 68:14-69:2; *id.* 109:1-12, ECF No. 70-5.

## II.     STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a party to assert by motion the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). The court may consider all factual pleadings, as well as affidavits and other evidence, but must resolve all factual disputes in the plaintiff's favor. *Id.* at 1070. Where no evidentiary hearing or trial is held, a plaintiff needs only to make a *prima facie* showing that personal jurisdiction exists. *Id.* at 1070 & n.4.[1]

## III.    ANALYSIS

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'" *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)). Service of process in a federal case is generally covered by

---

[1] The Court has considered the evidence submitted by both parties to support their respective positions. Plaintiff, relying on *Musso v. Seiders*, 194 F.R.D. 43 (D. Conn. 1999), argues that the motion should have been denied based on the allegations of the complaint without considering the evidence submitted through "jurisdictional discovery." Pl.'s Supp. Resp. 3, ECF No. 70. Unlike in *Musso v. Seiders*, *see* 194 F.R.D. at n. 3-4, here Defendant provided evidentiary support in the form of her affidavit to contest the allegations of Plaintiff's Amended Complaint. Consequently, the Court will consider the evidence submitted by both parties in construing disputed issues of fact.

Federal Rule of Civil Procedure 4. *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 409-10 (1987). The personal jurisdiction requirement flows from the Due Process Clause, protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum.  *See Peay*, 205 F.3d at 1211.

With respect to service of summons, a federal statute may authorize personal jurisdiction over a defendant. Fed. R. Civ. P. 4(k)(1)(C). The FDCPA, however, does not authorize nationwide service of process in a case such as this one. *See Velez v. Portfolio Recovery Assoc., Inc.*, 881 F.Supp.2d 1075, 1081 (E.D. Miss. 2012) ("The FDCPA, however, provides neither an independent basis for personal jurisdiction nor nationwide service of process.") (and cases cited therein). The Court thus turns to Rule 4(k)(1)(A), which states that service of a summons "establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

New Mexico's long-arm statute, N.M. Stat. Ann. § 38-1-16, extends personal jurisdiction as far as constitutionally permissible.  *Tercero v. Roman Catholic Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312. New Mexico courts use a three-part test to determine, under the long-arm statute, if personal jurisdiction exists: (1) whether the defendant committed an act or omission specifically set forth in the long-arm statute, as relevant here, whether the defendant transacted business or committed a tortious act within New Mexico; (2) whether the plaintiff's cause of action arose out of the alleged acts or omissions; and (3) whether there are sufficient minimum contacts with New Mexico to satisfy due process.  *See id.* ¶ 8. *See also* N.M. Stat. Ann. § 38-1-16(A)(1) and (3) ("Any person … who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself … to the jurisdiction of the courts of this state as to any cause of action arising from: (1) the transaction of any business within this

state ... (3) the commission of a tortious act within this state...."). The analysis of the transaction of business or commission of a tortious act within New Mexico "merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns." *Tercero*, 2002-NMSC-018, ¶ 8.

The Due Process Clause analysis requires that a plaintiff show that the defendant has sufficient minimum contacts with the forum state that she would reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The plaintiff must also show that the Court's exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 292 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A.     Minimum contacts

The minimum contact requirement may be satisfied in two ways – through general or specific jurisdiction. *See Trujillo v. Williams*, 465 F.3d 1210, 1218 & n.7 (10th Cir. 2006). A court may maintain general jurisdiction when the defendant's contacts with the forum state are "continuous and systematic." *Id.* n.7 (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984)). The parties here have primarily focused their briefs on specific jurisdiction, so the Court will too.[2]

A court may exercise specific jurisdiction if a defendant has purposefully directed his activities at the residents of the forum and the lawsuit results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Trujillo*,

---

[2] Plaintiff contends that it is highly likely, given the volume of Ms. Tygart's business, that she contacted other alleged debtors in New Mexico. Pl.'s Supp. Resp. 13, ECF No. 70. Such evidence could support general jurisdiction over Ms. Tygart. Plaintiff, however, acknowledges that such evidence would have been within the computers, Magic Jacks, and records that Defendant sold or destroyed when she closed her business. *See id.*; Def.'s Reply 22, ECF No. 88. In light of the Court's ruling that there is specific personal jurisdiction over Defendant Shelby, it need not resolve the issue of spoliation and its effect on the general jurisdiction analysis.

465 F.3d at 1218; *Tercero*, 2002-NMSC-018, ¶ 10 (quoting *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 245, 784 P.2d 986, 988 (1989)). A court must look at the degree to which the defendant availed herself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *See Trujillo*, 465 F.3d at 1219 (quoting *Burger King*, 471 U.S. at 475). A single act can support jurisdiction, so long as it creates a "substantial connection" to the forum. *Burger King*, 471 U.S. at 475 n.18; *Customwood Mfg., Inc. v. Downey Constr. Co., Inc.*, 1984-NMSC-115, ¶ 5, 102 N.M. 56 (stating that single business transaction within New Mexico is sufficient to subject non-resident defendant to jurisdiction of New Mexico courts when cause of action arises from that particular transaction of business).

The parties here dispute whether the actions of the debt collectors who made the phone calls to Plaintiff and his son in New Mexico can be considered acts of Defendant Tygart herself sufficient to allow this Court to constitutionally exercise jurisdiction over her. "[I]t is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state." *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990). "[T]his agency theory applies only when the agent's 'acts are committed in the course of or within the scope of the agent's employment.'" *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493-94 (10th Cir. 2012) (quoting *Taylor*, 912 F.2d at 433).

Defendant asserts that Florida law is controlling on this issue, a point Plaintiff does not contest. Instead, Plaintiff argues this Court should follow the Restatement (Second of Agency) ("Restatement"), which Florida does. *See Harper ex rel. Daley v. Toler*, 884 So.2d 1124, 1130 (Fla. Dist. Ct. App. 2004) ("The Florida Supreme Court has adopted the test in the Restatement section 220 for determining whether an employment relationship exists."). An employee is a

person employed to perform services for another and who is subject to the other's control or right to control in the performance of such services. *Id.* (quoting Restatement 220(1)). Under the Restatement, in evaluating whether a particular relationship is an employment relationship or an independent contractor relationship, a court should consider the following factors:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Id.* at 1130-31 (quoting Restatement section 220(2)). The "extent of control" is the most important factor. *Id.* at 1131.

Ms. Tygart had considerable control over both the means and the results of her debt collectors' work. Although she did not always exercise her rights, Ms. Tygart had the right to train her debt collectors, the right to monitor their performance, and the right to fire them for poor performance. At times, Ms. Tygart trained certain hires, made suggestions concerning how her debt collectors should conduct their work, and monitored their collections accounts. She expected her debt collectors to only work on the debt accounts of Preston, Thompson and Associates, and the work they did was the regular business of Preston, Thompson and Associates. Ms. Tygart supplied the majority of her debt collectors with office space, and she

supplied them with the instrumentalities necessary to do their work. Her debt collectors were generally unskilled and uneducated. Ms. Tygart was the sole proprietor of Preston, Thompson and Associates. Although her debt collectors did not generally stay on the job for lengthy stretches of time, the record suggests there was no specific time limit to their employment when she hired them. The fact that Ms. Tygart paid her collectors with IRS Form 1099s on a commission basis, although weighing in her favor, is not dispositive. Balancing all these factors, the debt collectors who Ms. Tygart hired were her employees and agents such that she, as principal, may be subject to the jurisdiction of the Court based on the activities of her agents within New Mexico.

Ms. Tygart contracted with Vantage to collect the debt of Plaintiff, a resident of New Mexico, among others. Ms. Tygart, using software provided by Vantage, assigned Plaintiff's debt account to one or more of her employee debt collectors. One or more of her employee debt collectors, as part of their employment duties and in the scope of their employment, purposefully called Plaintiff in New Mexico twice in an attempt to collect on his debt. Ms. Tygart deliberately and purposefully created a relationship with New Mexico that serves to make this Court's exercise of jurisdiction foreseeable such that she could expect a court in New Mexico to summons her for activities directly related to her business's debt collection activities. The causes of action in this case arise out of those contacts. Plaintiff has therefore established the minimum contact requirement. *Cf. Russey v. Rankin*, 837 F.Supp. 1103, 1104-05 (D.N.M. 1993) (holding that foreign corporation in business of collecting consumer debts was subject to personal jurisdiction of United States District Court for District of New Mexico for causes of action brought under FDCPA and NMUPA where it sent demand letters to plaintiff in New Mexico).

## B. Fair play and substantial justice

The question of whether the assertion of personal jurisdiction comports with fair play and substantial justice turns on the reasonableness of exercising personal jurisdiction over the defendant. *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). The inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less the defendant needs to show on unreasonableness. *Id.* In assessing reasonableness, a court should weigh the following factors: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the States in furthering fundamental substantive social policies. *Id.* at 1292 (quoting *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000)).

In this case, the first factor weighs slightly in favor of Defendant because litigating this case in New Mexico would place a burden on her as she resides in Florida and neither she nor her business had an office or facilities in New Mexico. Ms. Tygart's company, however, was in the business of collecting debt and her actions, and those of her agents on her behalf, were specifically directed to a New Mexico resident through direct phone solicitation to a New Mexico phone number. Ms. Tygart thus purposefully availed herself of the privilege of doing business in New Mexico. New Mexico has an interest in adjudicating a dispute arising from injuries sustained by one of its residents, and Mr. Gallegos's interest in obtaining convenient and effective relief would be best achieved for him by litigating the case in New Mexico. The second and third factors thus weigh in Plaintiff's favor.

The fourth factor -- whether the forum state is the most efficient place to litigate the

dispute -- depends on the location of witnesses, where the wrong underlying the suit occurred, what forum's substantive law governs, and whether jurisdiction is necessary to avoid piecemeal litigation. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1097 (10th Cir. 1998). The witnesses in this case are split between New Mexico and Florida. Although much of the physical evidence may have initially been in Florida, the record indicates that, through Ms. Tygart's actions, that evidence may no longer be available in Florida. The wrong occurred in New Mexico where Plaintiff lives. The applicable law is both federal and New Mexico law. There is currently no concern regarding piecemeal litigation. The fourth factor favors Plaintiff.

With respect to the fifth factor, the purposes of the FDCPA include eliminating abusive debt collection practices by debt collectors and promoting consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e). All the States have a shared interest in allowing the forum in which a plaintiff resides and was allegedly injured to exercise jurisdiction over the allegedly abusive debt collector who purposefully targeted the forum state's resident. The fifth factor also weighs in Plaintiff's favor.

After balancing all these interests, the Court concludes that exercising jurisdiction in this forum is reasonable and comports with fair play and substantial justice.

**IT IS THEREFORE ORDERED** that Defendant Tygart's Motion for Limited Appearance to Challenge Jurisdiction and Motion to Dismiss (**ECF No. 16**) is **DENIED** and this Court will exercise personal jurisdiction over Defendant Tygart.

_____
**UNITED STATES DISTRICT JUDGE**